**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **KODELL VALENTINO FOSTER,** | § | |
| **TDCJ No. 02181404** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **W-20-CV-556-ADA** |
| | § | |
| **BOBBY LUMPKIN,[1]  Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

## ORDER

Before the Court are Petitioner Kodell Valentino Foster's pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1), Respondent's Response (ECF No. 17), and Petitioner's Reply (ECF No. 19). Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner's federal habeas corpus petition should be denied under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d).

## I.  Background

In March 2015, Petitioner was charged by indictment with three counts of sexual assault. (ECF No. 18-36 at 45-46.) In December 2017, a jury convicted Petitioner of all three counts and sentenced him to life imprisonment on each count, to run concurrently.

---

[1]  The previous named respondent in this action was Lorie Davis. Bobby Lumpkin succeeded Ms. Davis as the Director of the Texas Department of Criminal Justice, Correctional Institutions Division and is automatically substituted as a party. FED. R. CIV. P. 25(d).

1

*State v. Foster*, No. 2015-703-C2 (54th Dist. Ct., McLennan Cnty., Tex. Dec. 7, 2017.)

(ECF No. 18-37 at 1-6.) The following is a brief summary of the factual allegations against

Petitioner.

> Appellant was arrested in December of 2014. In January of 2015, a grand jury indicted appellant on three counts of sexual assault. . . . On March 10, 2016, appellant filed a motion for speedy trial and asked that the charges be dismissed with prejudice. However, no order setting a hearing on the motion was filed.

> On September 29, 2016, appellant's defense counsel filed a motion to withdraw as attorney of record. The trial court held a hearing on the motion on October 21, 2016, and the following exchanged occurred:

>> [Defense Counsel]: Mr. Foster, tell the Judge why you asked me to file the motion to withdraw.

>> [Appellant]: Well, sir, with all due respect to the Court. [Counsel] and I, we get along great. I just feel like the process isn't moving along as—as it should be. We filed a motion for a speedy trial on March the 1st, 2016. Also, there's evidence that proves my innocence that—that's came [sic] out, I believe, that we do have. And I just haven't been able to get any answers up until now. I've been incarcerated for almost two years. I haven't gotten absolutely any answers as far as why I'm still here, why I cannot get a—a date to go to trial. Since, obviously, the case will not get dismissed, I would like to go to trial. But I can't get a date to go to trial. And neither I or [Counsel] have been able to get an answer, so . . . .

> The trial court told appellant that, at that time, trial was set for November 7, 2016—just over two weeks away. At the end of the hearing, the trial court asked, "anything else from the State or from the defense at this time?", and defense counsel answered "No, sir." The trial court responded: "Okay. Then at this time, I'm going to deny the Motion to Withdraw."

> Trial began on December 4, 2017. The complainant testified that she was seventeen years old when the offenses took place. She explained that, while under the influence of prescribed medication, she was walking down the street when appellant offered to give her a ride to her friend's house. The complainant accepted his offer and got in the vehicle. Appellant, however, drove to his house and sexually assaulted her. After the assault was over,

appellant drove the complainant away from his house, and she got out of the car once she recognized a gas station they had passed. Appellant had two roommates at the time of the assault: Estella and Elmer Sadler. Both Mr. and Mrs. Sadler testified at trial.

The State called Mrs. Sadler as a witness during its case in chief. During cross-examination, appellant's defense counsel asked Mrs. Sadler if she had any concerns about her children being around appellant when appellant was home, and she answered "No." The State, on re-direct, asked Mrs. Sadler whether she knew appellant had recently been paroled and whether she was aware of his prior felony convictions. Defense counsel objected to this testimony under Texas Rules of Evidence 401, 402, 403, 404(b), and 802. The trial court overruled the objections. Mrs. Sadler testified that: she knew appellant had moved in with her and her husband shortly after being released on parole; she knew appellant had been imprisoned for multiple years prior to his release on parole; and she did not know he had convictions for possession of cocaine, possession of a controlled substance with intent to deliver, and possession of a firearm by a felon.

The jury found appellant guilty of all three counts. . . .

*Foster v. State*, No. 13-18-00051-CR, 2018 WL 6626728 (Tex. App.—Corpus Christi-Edinburg, Dec. 19, 2018, pet. ref'd.)

Petitioner's conviction was affirmed on appeal. *Id.* On March 20, 2019, the Texas Court of Criminal Appeals (TCCA) refused Petitioner's Petition for Discretionary Review (PDR). *Foster v. State*, No. PD-037-19 (Tex. Crim. App. Mar. 20, 2019). Petitioner did not petition for a writ of certiorari to the United States Supreme Court. (ECF No. 1 at 3.)

On April 28, 2020, Petitioner filed a pro se state habeas corpus application, listing the following four grounds of relief:

1. Counsel was ineffective for failing to protect and execute Petitioner's right to a fair and speedy trial;

2. Counsel was ineffective by opening the door for the admission and introduction of character evidence despite a Motion in Limine prohibiting it and for failing to

3

prevent Petitioner's federal probation officer from testifying to bad acts without a ruling from the trial court outside the jury's presence;

3. Counsel was ineffective by failing to investigate; and

4. Counsel was ineffective for failing to establish the proper exceptions to make the state's hearsay objections admissible.

(ECF No. 18-35 at 8-26.) On May 11, 2020, the state habeas court ordered Petitioner's trial counsel, Mr. Brian Pollard, to file an affidavit addressing these claims. (ECF No. 18-36 at 13-15.)

Petitioner filed his instant federal habeas petition on June 22, 2020 and the Court granted his motion to stay the case pending the TCCA's disposition of his state habeas application. (ECF Nos. 1, 3, 6.) On June 11, 2020, the state habeas court entered its Findings of Fact and Conclusions of Law and recommended denying Petitioner's application for a writ of habeas corpus. (ECF No. 18-36 at 30-36.) On August 26, 2020, the TCCA denied Petitioner's application without written order the findings of the trial court without hearing and on the court's independent review of the record. *Ex parte Foster*, No. WR-91,457-01. (ECF No. 18-31.)

On September 4, 2020, Petitioner notified the Court of the TCCA's denial of his state habeas application, and the Court lifted the stay on his federal petition. (ECF Nos. 10, 11.) Petitioner's federal habeas petition lists the following grounds of relief:

1. Trial counsel provided ineffective assistance by not protecting Petitioner's right to a fair and speedy trial;

2. Trial counsel provided ineffective assistance when opening the door for the introduction of character evidence;

4

3. Trial counsel provided ineffective assistance for allowing Petitioner's federal probation offer to testify to Petitioner's supervision and misconduct; and

4. Trial counsel provided ineffective assistance when he failed to establish the necessary hearsay exceptions to make certain evidence admissible.

(ECF No. 1.) On December 4, 2020, Respondent filed their response (ECF No. 17) to which Petitioner replied (ECF No. 19).

## II. Standard of Review

Petitioner's federal habeas petition is governed by the heightened standard of review provided by AEDPA. *See* 28 U.S.C. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This demanding standard stops just short of imposing a complete bar on federal court re-litigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary

conclusion was unreasonable. *Richter*, 562 U.S. at 102. A petitioner must show that the state court's decision was objectively unreasonable, not just incorrect, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). As a result, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103. "'If this standard is difficult to meet—and it is—that is because it was meant to be.'" *Mejia v. Davis*, 906 F.3d 307, 314 (5th Cir. 2018) (quoting *Burt v. Titlow*, 571 U.S. 12, 20 (2013)).

## III. Analysis

### A. Ineffective Assistance of Counsel

Petitioner's federal habeas claims are based on allegations that his trial counsel provided constitutionally deficient assistance of counsel. The Sixth Amendment to the United States Constitution guarantees citizens the assistance of counsel in defending against criminal prosecutions. U.S. CONST. amend VI. Sixth Amendment claims based on ineffective assistance of counsel are reviewed under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he

demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced the petitioner's defense. *Id.* at 687-88, 690. The Supreme Court has emphasized that "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards. *Strickland,* 466 U.S. at 687-89. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Burt*, 571 U.S. at 22 (quoting *Strickland*, 466 U.S. at 690). To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Under this prong, the "likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112 (citing *Strickland*, 466 U.S. at 693). A habeas petitioner has the burden of proving both prongs of the *Strickland* test. *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Ineffective assistance of counsel claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). When the state court has adjudicated the claims on the merits, a federal court must review a petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *See Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citing *Cullen v. Pinholster*, 563 U.S.

170, 190 (2011)). In such cases, the "pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standard," but whether "the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S at 101.

1. *Failure to protect and execute Petitioner's right to a speedy trial*

In his first ground for relief, Petitioner claims his trial counsel provided ineffective assistance because he failed to protect Petitioner's constitutional right to a fair and speedy trial. Specifically, Petitioner alleges his counsel at the time, Mr. Guy Cox, file a motion for speedy trial but requested a dismissal of the charges, rather than a trial date, which Petitioner alleges prejudiced him.

The Texas Thirteenth Court of Appeals addressed Petitioner's claim that he was denied the right to a speedy trial on direct review. After reviewing the claim's factual background (restated above in Section I), the court of appeals analyzed Petitioner's claim using the factors delineated in *Barker v. Wingo*, 407 U.S. 514 (1972) and concluded the trial court did not err by denying Petitioner's speedy-trial motion:

> In sum, the evidence in this case fully supports the trial court's ruling. There was a delay of fifteen months that weighs in favor of finding a violation of appellant's right to a speedy trial. However, from the record, we conclude that appellant did not really want a speedy trial; he wanted only a dismissal of the charges. The nature of the State's delay and official negligence, the tardiness of appellant's sole assertion of his speedy-trial right, and the lack of any substantial personal or defense prejudice resulting from the State's delay convinces us that the trial court did not err in denying appellant's motion for speedy trial. We conclude appellant was not denied his Sixth Amendment right to a speedy trial. . . .

*Foster*, 2018 WL 6626728 at *5.

The state habeas court, which did not order Mr. Guy Cox to submit an affidavit addressing this claim, made the following findings of fact:

> 2. The record and the Court's own recollection reflect that Applicant's original trial counsel, Guy Cox, presented a request for speedy trial. On direct appeal, the Thirteen[th] Court of Appeals assumed without deciding that the issue had been preserved. The Court of Appeals went on to overrule Applicant's speedy trial issue on the merits. The Court finds that the face of the Application . . . fails to raise any facts suggesting any deficient performance on the part of Mr. Pollard in regard to a speedy trial claim. The record further reflects that, on presentation of the speedy trial claim, Appellant was afforded relief in the form of a priority jury trial setting.

(ECF No. 17-36 at 32.) In a related footnote, the state habeas court stated "During the pendency of this Application, Applicant has made a written request that Mr. Cox present his affidavit addressing the speedy trial issue, clarifying that his ineffective assistance claim was directed specifically toward Mr. Cox. As the discussion makes clear, the Court of Appeals addressed this issue on the merits thus obviating the need for any input from Mr. Cox." (*Id.*)

This Court's review of Petitioner's claim is guided by the AEDPA, under which Petitioner must show that the state habeas court's determination was an unreasonable application of *Strickland*. The Sixth Amendment guarantees every criminal defendant "the right to a speedy and public trial." U.S. CONST. amend VI. Again, to establish an ineffective-assistance claim, Petitioner must show both deficient performance and prejudice. *Strickland*, 466 U.S. at 687. "With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different.'" *Richter*, 562 U.S. at 104 (*quoting Strickland*, 466 U.S. at 694.)

Here, Petitioner argues that Mr. Cox's performance prejudiced him because Mr. Cox requested dismissal of the charges, rather than requesting a trial date. Yet in affirming the trial court's denial of Petitioner's speedy-trial motion, the Thirteenth Court of Appeals made clear the request for dismissal was one of many factors that weighed against Petitioner's speedy trial motion. The court noted that Petitioner only made the speedy trial request once; Petitioner did not testify that he was anxious about the case, found his incarceration oppressive, or that his defense was impaired by the delay in any way. As a result, even if Mr. Cox had requested a trial date rather than dismissal, Petitioner has not shown that the trial court would have granted his speedy trial motion. *See Richter*, 562 U.S. at 112 (to show prejudice, the "likelihood of a different result must be substantial, not just conceivable); *see also Pondexter v. Quarterman*, 537 F.3d 511, 520 (5th Cir. 2008) (finding an ineffective-assistance claim may be rejected for want of either deficient performance or prejudice, and thus the absence of either prong of the *Strickland* analysis is dispositive). Accordingly, the state habeas court's application of *Strickland* to this claim was not unreasonable, and this claim is denied.

2. *Opening the door to unfavorable character evidence*

In his second ground for relief, Petitioner argues his trial counsel, Mr. Pollard, provided ineffective assistance when he opened the door for the admission of evidence of Petitioner's prior convictions. Specifically, Petitioner points to Mr. Pollard's cross-examination of Mrs. Estelle Sadler, one of the State's witnesses:

Mr. Pollard: Okay. And your children -- you had your children around [Petitioner] when he was [living with you]; is that right?

Ms. Sadler: Yes.

Q: Didn't have any concerns over that?

A: No.

(ECF No. 18-18 at 184.) Petitioner argues Mr. Pollard admitted that he performed deficiently when he asked these questions, which allowed the State to question Ms. Sadler about her knowledge of Petitioner's prior convictions, thereby admitting these convictions into evidence. Petitioner argues he was prejudiced because his prior convictions became the focus of the trial rather than the allegations against him.

In his affidavit before the state habeas court, Mr. Pollard responded as follows:

During trial preparation I identified what I perceived to be weaknesses in the State's case. My strategy was to elicit and show the following themes and arguments:

19. Mr. & Mrs. Sadler, Defendant's roommates, lived with him with their children, and they had no reservations about the Defendant staying with them.

. . . .

Reference is made to item 19 above. I acknowledge asking the question. Asking the question was a mistake. I asked the question after several days of a tiring, bitterly contested and hard fought trial.

The Defendant had said that he wanted to take the stand, and he ultimately did so. Most, if not all, of the evidence elicited by the State after I asked the question would have been admitted once the Defendant took the stand and testified.

(ECF No. 18-36 at 23-25.) The state habeas court—one and the same with the trial court—made the following findings:

11

3. In his second ground for relief, Applicant asserts deficient performance by trial counsel in asking Applicant's roommate their opinion of Applicant's character, thus opening the door for the witness to be cross-examined as to the witness'[s] knowledge of Applicant's prior criminal convictions. In his responsive affidavit, trial counsel concedes that the asking of this specific question was a mistake. However, he also notes that part of the trial strategy was to show that Applicant's roommates had no qualms about having Applicant live with them.

4. Counsel's affidavit further reflects that Applicant consistently expressed his desire to testify, knowing that this would allow the State to present his criminal history to the jury. The record reflects that Applicant did indeed testify at trial.

5. The record and the Court's recollection reflect that Applicant's prior convictions were for offenses wholly unrelated to sexual offenses, and thus did not reflect a propensity to commit the charged offenses.

6. The record and the Court's own recollect further reflect that the evidence adduced at trial was overwhelmingly supportive of the jury's guilty verdicts. This evidence included DNA findings consistent with the victim's recounting of events and the victim's knowledge of the inside of Applicant's home, where the offenses occurred, which she would not have otherwise had a reason to know.

7. Accordingly, the Court finds that Applicant has failed to demonstrate that he was prejudiced due to trial counsel's mistake of opening the door to presentation of Applicant's prior criminal history.

(*Id.* at 32-33.) Petitioner argues that, contrary to Mr. Pollard's affidavit and the state habeas court's findings, he did not consistently express a desire to testify. Rather, he argues that, as the last person to testify, his entire criminal history had already been revealed, and that "[t]here is no evidence that the Applicant had any desire to testify before that happened." (ECF No. 19 at 10.)

The Fifth Circuit has held that "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel

12

unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). "[C]ounsel has wide latitude in deciding how best to represent a client," *Yarborough v. Gentry*, 540 U.S. 1, 5-6, 8 (2003), and counsel's choice of a defense and his strategy in arguing that defense to a jury are "virtually unchallengeable," *Strickland*, 466 U.S. at 690. Further, because decisions regarding cross-examination are strategic, they usually "will not support an ineffective assistance claim." *United States v. Bernard*, 762 F.3d 467, 472 (5th Cir. 2014) (citation omitted). As a result, as long as counsel's trial strategy was reasonable, "[s]peculating about the effect of tinkering with the cross-examination questions is exactly the sort of hindsight that Strickland warns against." *See Castillo v. Stephens*, 640 F. App'x 283, 292 (5th Cir. 2016) (citing *Strickland*, 466 U.S. at 689).

The state habeas court concluded that even though Mr. Pollard admitted his mistake in asking the question, it was nonetheless in keeping with Mr. Pollard's overall trial strategy to show Petitioner's roommates were comfortable with Petitioner living with them and their children. The state habeas court also credited Mr. Pollard's statement that Petitioner consistently requested to testify in his own defense, despite knowing the State would present his criminal history to the jury if he did so. Petitioner disputes this but provides no clear and convincing evidence in support of his allegation. *See* 28 U.S.C. § 2254(e)(1) (a state court's factual findings are "presumed to be correct" unless the habeas petitioner rebuts the presumption through "clear and convincing evidence"); *see also United States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007) ("conclusory allegations are

insufficient to raise cognizable claims of ineffective assistance of counsel") (quoting *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)).

Finally, the state habeas court also concluded that, even if Mr. Pollard's performance was deficient, it was not prejudicial as the overwhelming weight of evidence at trial supported Petitioner's conviction. *See Mays v. Stephens*, 757 F.3d 211, 214 (5th Cir. 2014) (citations omitted) (where the state habeas court and trial court are one in the same, the presumption of correctness afforded the state habeas court's factual determinations is especially strong). Petitioner has failed to rebut the state habeas court's findings with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Accordingly, the Court concludes the state habeas court's application of *Strickland* was not unreasonable, and this claim is denied.

### 3. *Allowing Petitioner's federal probation offer to testify*

In Petitioner's third claim for relief, he argues Mr. Pollard provided ineffective assistance when he allowed Petitioner's former probation officer to testify about Petitioner's supervision as this testimony violated the motion in limine. Petitioner states that Mr. Pollard objected to the testimony, but did not specifically object on these grounds. (ECF No. 13 at 15-17.) Petitioner included this claim in his second ground of relief in his state habeas application, but neither Mr. Pollard nor the state habeas court addressed these factual allegations directly. However, the TCCA denied Petitioner's state habeas application on the findings of the trial court and "the court's independent review of the record." (ECF No. 18-31.)

After the State called Mr. Steve Oppermann, Petitioner's federal probation officer,

as a witness, Mr. Pollard objected:

> MR. POLLARD: Your Honor, if I may interject? I'd like to object to any -- this testimony of this witness regarding extraneous conduct under Texas Rules of Evidence Rules 401, 402, 403, 404(b). It would be a volition of due process, a violation of due course of law in the Texas constitution. It should be excluded because the probative value outweighs the danger of unfair prejudice under Rule 403. It's irrelevant and immaterial under Rule 402. Probative value outweighs the -- the -- the probative value outweighs the danger of unfair prejudice, Rule 403. Evidence is character, a character trait, 404. Evidence of another crime or wrong or act under 404(b)(1). It's also hearsay under Rule 802. We would just object to the -- anything this witness has to say along those lines. I would like a running objection on those grounds as to this witness.
>
> THE COURT: You'll need to object to the questions as they're asked. I don't know what questions are going to be asked, so I'm not gonna grant you a running objection before they've gotten past his name.

(ECF No. 18-18 at 192-93.) After Mr. Oppenheimer testified about Petitioner's move from

a half-way house in Austin to Waco, Mr. Pollard again objected:

> MR. POLLARD: Your Honor, at this time, I would pose that same objection. Do you want me to repeat it or can I have that objection and have a running objection to those -- to this testimony?
>
> THE COURT: You just want to lodge the same objection you did last time?
>
> MR. POLLARD: Yes
>
> THE COURT: You can do – that's certainly fine.
>
> MR. POLLARD: And have a running objection as to this witness on this -- on this ground of testimony?
>
> THE COURT: On this -- on this question -- well, I don't know what the next question is gonna be. I'll – I'll – I'm gonna overrule the objection as to this question.

(*Id.* at 194-95.) Mr. Oppermann went on to testify that, after Petitioner moved to Waco, Mr. Oppermann did an unscheduled visit to Petitioner's home, where he found two other people smoking marijuana. Petitioner was not at home. Mr. Oppermann also testified that there were no roommates on Petitioner's lease, and that the next day he advised Petitioner that having people at his house smoking marijuana could get him into trouble. Mr. Oppermann then identified Petitioner in the courtroom and his testimony ended. (*Id.* at 195-99.)

Mr. Oppermann's testimony directly followed that of Ms. Sadler, where Mr. Pollard's cross-examination opened the door to evidence of Petitioner's prior convictions detailed above. Although this issue was not directly addressed by the state habeas court in its findings of fact, the TCCA denied Petitioner's state habeas application upon its own independent review of the record. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits" even without a written explanation of the court's reasoning. *Richter*, 562 U.S. at 99. In such situations, this Court "(1) assumes that the state court applied the proper 'clearly established Federal law'; and (2) then determines whether its decision was 'contrary to' or 'an objectively unreasonable application of' that law." *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003) (citations omitted).

Once Mr. Pollard opened the door to Petitioner's prior convictions, the State was free to present Mr. Oppermann's testimony. Further, as the state habeas found, there was overwhelming evidence of Petitioner's guilt, and thus any deficient performance by Mr. Pollard was not prejudicial. *See Richter*, 562 U.S. at 112 (to show prejudice, the "likelihood

16

of a different result must be substantial, not just conceivable); *see also Pondexter v. Quarterman*, 537 F.3d 511, 520 (5th Cir. 2008) (finding an ineffective-assistance claim may be rejected for want of either deficient performance or prejudice, and thus the absence of either prong of the *Strickland* analysis is dispositive). Accordingly, this claim is also denied.

    4. *Failure to establish exceptions to hearsay to make certain evidence admissible*

In Petitioner's last claim for relief, he argues Mr. Pollard provided ineffective assistance when he failed to argue that certain evidence was admissible based on hearsay exceptions. Specifically, Petitioner argues that, after his prior convictions were presented to the jury, he attempted to defend himself with the following evidence: (1) the condition of the complainant when she approached him, which Petitioner alleges was "shaken up, bruised, and stressed out" and that she told him she had just been in a physical fight with her older sister; and (2) the business records from the Heart of Texas MHMR center, which Petitioner alleges showed the complainant had mental health issues. (ECF No. 13 at 18-19.)

Mr. Pollard responded to this claim in his state habeas affidavit:

Defendant complains that I did not fight harder to get the victim's statements concerning her conflict with her sister by arguing exceptions to the hearsay rule. Without a transcript or statement of facts, I am at a disadvantage to fully understand Defendant's complaint or to respond to it.

However, the record was replete with evidence of foreign [DNA] and the victim's possible sexual activities with 2 other men prior to her SANE exam. I seem to recall that evidence of the victim's conflict with her sister came was admitted at some other point during the trial.

Finally, since the victim's emotional recounting of her conflict with her sister to the Defendant occurred some time after the conflict, I did not believe that this qualified as an "excited utterance" or a "present sense impression" exception to the hearsay rule under Rule 803. It would not have occurred to me to argue for its admissibility under either of those two theories.

With regard to the business affidavit, again, I do not specifically recall the details of what happened at trial. My usual procedure is to try to dispense with the need to subpoena a medical records custodian if I can get the business record stipulated to in advance. Even though the prosecutor may stipulate that the records qualify as business records, the prosecutor may have objections on other grounds to the introduction of the record. The prosecutor and I probably agreed to stipulate that the records were business records, but we agreed that she could make objections to their admissibility on other grounds.

(ECF No. 18-36 at 26.) The state habeas court made the following findings of fact:

10. Applicant's final ground for relief asserts deficient performance by trial counsel in failing to assert exceptions to hearsay that would have allowed Applicant to testify to statements made to him by the victim. The record of Applicant's testimony reflects that he attempted to repeat the victims's hearsay statements without any prompting by his counsel, or in response to counsel's questions. Further, the record contains trial counsel's admonitions to Applicant to only answer the questions asked. Further, counsel's affidavit reflects his legal reasoning that there was no hearsay exception that would have allowed the admission of the statements; and the record accordingly reflects that trial counsel never urged such a hearsay exception.

11. Counsel's affidavit reflects that part of the trial strategy included an attempt to show the victim's previous falling out with her sister, and her resulting emotion state for which Applicant was trying to comfort her. These matters were revealed and presented to the jury through other evidence, and it was not necessary for Applicant to bolster this through his attempted hearsay testimony.

12. Accordingly, the Court finds that Applicant was not prejudiced by any claimed deficient performance based on a failure to urge the admission of the victim['s] statements to Applicant through a hearsay exception.

13. Applicant complains that trial counsel was ineffective in failing to introduce medical records into evidence under a business records exception. Applicant fails to relate facts showing how such claimed deficient

performance prejudiced him. The record reflects that this issue arose during the cross-examination of Dr. Dhaval Parikh, a psychologist who treated the victim. The specific item concerned was a treatment note from the victim's MHMR records, with which Dr. Parikh was unfamiliar. The record reflects that the State's objection was sustained on this basis.

14. The record and the Court's own recollection of trial counsel's cross-examination of Dr. Parikh reflect an effective cross-examination that revealed the victim's psychological troubles and possibly resulting credibility issues. Further, trial counsel successfully admitted Dr. Parikh's own treatment notes relating to the victim. Accordingly, the Court finds that Applicant was not prejudiced by any claimed deficient performance by trial counsel in failing to admit the MHMR treatment note.

(*Id.* at 33-34.)

As noted above, the state habeas court's factual findings are presumed correct unless Petitioner rebuts them with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). This presumption is especially strong when the trial court and state habeas court are one in the same. *See Mays*, 757 F.3d at 214. Here, the state habeas court credited Mr. Pollard's affidavit and found that part of his trial strategy—to show there was a physical altercation between the complainant and her sister—was presented to the jury through other testimony and did not require Petitioner's testimony to bolster it. The state habeas court also concluded that Mr. Pollard's cross-examination of one of the complainant's treating physicians revealed to the jury evidence of the complainant's psychological troubles and credibility issues, and that Petitioner was not prejudiced by not having the MHMR records admitted.

Thus, the evidence Petitioner wanted presented to the jury—regarding the complainant's fight with her sister and her psychological history—was indeed presented, if not in the exact way Petitioner desired. He was nonetheless convicted. "Simply because

counsel's strategy did not successfully convince the jury does not mean counsel's performance was deficient." *Avila v. Quarterman*, 560 F.3d 299, 314 (5th Cir. 2009). Petitioner has failed to rebut the state habeas court's findings with clear and convincing evidence and failed to show that Mr. Pollard's performance fell beyond the bounds of prevailing objective professional standards. *Strickland,* 466 U.S. at 687-89. Accordingly, the state habeas court's application of *Strickland* was not unreasonable, and this claim is denied.

### IV. Certificate of Appealability

A petitioner may not appeal a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant. *See Miller-El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where a district court rejects a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court rejects a habeas petition on procedural grounds without reaching the constitutional claims, "a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of

20

a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El*, 537 U.S. at 327 (citing *Slack*, 529 U.S. at 484). Accordingly, the Court will not issue a certificate of appealability.

It is therefore **ORDERED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DENIED**; and

It is **FURTHER ORDERED** that no certificate of appealability shall issue in this case.

**SIGNED** on May 20, 2021

_____
    ALAN D ALBRIGHT
    UNITED STATES DISTRICT JUDGE